UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**CLOSED CIVIL CASE**

CASE NO. 06-21879-CIV-HOEVELER

ANDREW B. BLOOM and ADELE BLOOM,

       Plaintiffs,

v.

MIAMI-DADE COUNTY, a Florida County and political
subdivision of the State of Florida, FLORIDA FISH & WILDLIFE
CONSERVATION COMMISSION, an agency of the State of Florida,
EVERGLADES OUTPOST, INC., SOUTH FLORIDA S.P.C.A.
(SOCIETY FOR THE PREVENTION OF CRUELTY TO ANIMALS) INC.,
MELISSA PEACOCK, individually and as an Officer of the Miami-Dade
Police Department, SHEREE DIBERNARDO, individually and as an
Officer of the Miami-Dade Police Department, PATRICK REYNOLDS,
individually and as an Officer of the Florida Fish & Wildlife Conservation
Commission, LAURIE WAGGONER, and ROBERT W.FREER, JR.,

       Defendants.

_____/

## ORDER ON MOTIONS TO DISMISS
## FILED BY STATE AND COUNTY DEFENDANTS

This Cause comes before the Court on the Motions to Dismiss filed by

Florida Fish & Wildlife Conservation Commission and Patrick Reynolds ("State

Defendants"), and Miami-Dade County and Melissa Peacock and Sheree

DiBernardo (collectively, County Defendants).  The Court heard argument from the

parties on March 16, 2011.  The Court's Orders of March 2010 (dismissing a prior

version of Plaintiffs' complaint) and March 31, 2011 (dismissing the SPCA and

Everglades Outpost defendants), summarized pertinent facts of this case,[1] and are incorporated herein.

Plaintiff Andrew Bloom's original complaint was filed *pro se* on July 27, 2006, against several County defendants, complaining about the seizure of animals from his property and the subsequent prosecution of Bloom. Plaintiff also filed a related case naming defendants working with the "Florida Fish and Wildlife Commission." After dismissal of the original complaints in both cases, the Plaintiff filed an amended complaint in 2008 in this case, the lower-numbered case, consolidating his claims - which was later dismissed. Plaintiff then obtained the assistance of counsel and filed a Second Amended Complaint in May 2009, adding his wife, Adele Bloom, as a plaintiff and naming additional defendants. After another order on dismissal, Plaintiffs filed a Third Amended Complaint in April 2010, which is the subject of this Order.

The Third Amended Complaint, filed in April 2010, includes more than fifty pages of factual allegations, and the following claims:

Count 1 - 42 U.S.C. § 1983, multiple violations, brought by Andrew Bloom against all individual Defendants, SPCA, and Everglades Outpost
Count 2 - 42 U.S.C. § 1983, multiple violations, brought by Adele Bloom against same Defendants listed above in Count I
Count 3 - 42 U.S.C. § 1983, multiple violations, against all government institution Defendants
Count 4 - 42 U.S.C. § 1983 arrest without probable cause, against all government institution and individual officer Defendants

---

[1]As the Court is ruling on a motion to dismiss, the factual allegations are accepted as true - but only to the extent that they are not conclusory. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1951 (2009).

Count 5 - 42 U.S.C. § 1983, false arrest and imprisonment, malicious
         prosecution against all Defendants
Count 6 - Intentional Infliction of Emotional Distress against all Defendants
Count 7 - Conspiracy against all Defendants
Count 8 - Defamation, Libel, and Slander against all Defendants
Count 9 - Trespass to Chattel against all Defendants
Count 10 - Conversion against all Defendants

According to the parties, civil proceedings are ongoing in state court as to the

condition of the animals when they were seized and the question of permanent

custody of the animals.

## ANALYSIS

The Court begins with a brief statement of the legal requirements for a

federal complaint. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss

does not need detailed factual allegations, a plaintiff's obligation to provide the

'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions,

and a formulaic recitation of the elements of a cause of action will not do." Bell Atl.

Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations omitted). Sufficient facts

must be stated to raise the right to relief above a speculative level. Id. The

Supreme Court requires that the complaint include enough facts to state a claim to

relief that is "plausible on its face." Id. at 570.


I. Plaintiffs' claims against the State Defendants

A. Service issues

As a threshold matter, the State Defendants argue that service of this action

was not perfected in a timely manner. Florida law requires that process against

any public commission "shall be served on the public officer being sued or the chief executive officer of the ... commission." Fla. Stat. § 48.111(2). Defendant Florida Fish & Wildlife Conservation Commission was not in the original two versions of the complaint filed in this case but was included in the Second Amended Complaint, filed in May 2009; however, the record does not reflect that the Commission was ever served with the Second Amended Complaint. After the Third Amended Complaint was filed on April 9, 2010, the Commission finally was served on May 24, 2010 (Dkt. No. 113).

In reviewing the record of the related case, Case No. 06-civ-21880 (which this Court dismissed, directing Plaintiff to add those allegations to the present case), the Court notes that Plaintiff listed as defendants "Nick Wiley, Commissioner, Florida Fish and Wildlife Commission" and current Defendant Officer Reynolds. The statement of parties in that related case also referenced the "State of Florida Fish and Wildlife Game Commission" in addition to its Commissioner, Board of Directors, etc., and a return of service was filed indicating individual service on Commissioner Wiley at the Commission office in Tallahassee on November 1, 2006. Defendant Wiley, in his official capacity, did not challenge service in that related case.

While it is not clear from the record that the Commission was properly served in the related case, it does appear that the Commission may have been on notice as to a general claim raised by Plaintiff, proceeding without counsel, as early as November 2006 when Commissioner Wiley was served with process in the related

4

case; in addition, the Commission has been on notice of the current version of the complaint since May 2010.  The Eleventh Circuit has held that Fed. R. Civ. P. Rule 4(m) "grants discretion to the district court to extend the time for service of process even in the absence of a showing of good cause."  Horenkamp v. Van Winkle & Co., 402 F.3d 1129, 1132 (11th Cir. 2005).  As Plaintiff was proceeding *pro se* in the early stages of this proceeding, and as it appears that, at minimum, a Commissioner of the Defendant Commission was aware of Plaintiff Andrew Bloom's allegations as early as November 2006, the Court will exercise discretion and deny the Defendant Commission's Motion to Dismiss as to the alleged deficiencies in service of process.

As to Defendant Reynolds, whom also was served with the Third Amended Complaint on May 24, 2010 (Dkt. No. 108), the Court notes that Defendant was served in the related case on November 1, 2006 - and did not challenge service in that action.  The Court previously authorized the issuance of an alias summons as to Defendant Reynolds as to the Third Amended Complaint (see Dkt. No. 109).  (On March 23, 2009, the Court granted an earlier motion to quash service on Defendant Reynolds; that ruling was based on the Court's dismissal, without prejudice, of an earlier version of the complaint - i.e., the motion to quash was rendered moot.[2])  As Defendant Reynolds was named as a defendant (and served) in related Case No. 06-civ-21880, was identified as early as the First Amended Complaint in the present

---

[2]A typographical error in the March 2009 Order referenced the motion to quash as having been filed by Wiley, instead of Reynolds.

case in 2008, and was served with an alias summons in May 2010, the Court finds

that Officer Reynolds has been sufficiently notified of this action and that the

interests of justice do not require his dismissal for lack of proper service.

Although the Court has determined that service of process was sufficient as

to the State Defendants under the specific circumstances presented, Plaintiffs'

Third Amended Complaint is subject to dismissal, in part, as to the State

Defendants for other reasons, as discussed below.


B. Plaintiffs' claims against the Commission

Absent an express waiver, the Eleventh Amendment bars a damages action

against a State in federal court.  Kentucky v. Graham, 473 U.S. 159, 169 (1985).

Plaintiff's state tort claims (Counts 6 - 10) against the Commission therefore all are

subject to the conditions of Fla. Stat. § 768.28, which represents Florida's limited

waiver of sovereign immunity.  Notice to the state agency and the Department of

Financial Services is required within three years of the accrual of a claim against

the state.

> An action may not be instituted on a claim against the state or one of its
> agencies or subdivisions unless the claimant presents the claim in writing to
> the appropriate agency, and also ... presents such claim in writing to the
> Department of Financial Services, within 3 years after such claim accrues
> and the Department of Financial Services or the appropriate agency denies
> the claim in writing ....

Fla. Stat. § 768.28.  Plaintiffs claim, in their response brief filed on November 15,

2010, that they "have simultaneously provided such notice to the defendants" but

have offered no evidence thereof, nor would such notice - even if "simultaneously" provided - have been timely as to any of Plaintiffs' state tort claims.  In any event, the Court is reviewing the complaint on a dismissal motion, and as the complaint does not allege compliance with the mandatory notice provisions of Fla. Stat. § 768.28, the claims are subject to dismissal.  According to Florida law, "not only must the notice be given before a suit may be maintained, but also the complaint must contain an allegation of such notice." Levine v. Dade County School Bd., 442 So. 2d 210, 213 (Fla. 1983), citing Commercial Carrier Corp. v. Indian River County, 371 So. 2d 1010 (Fla. 1979).  For the above stated reasons, Counts 6 - 10 are dismissed, with prejudice, as to the Commission.

Finally, Plaintiffs concede that there is no basis for a finding of liability under 42 U.S.C. § 1983 against the Florida Fish & Wildlife Conservation Commission, as the state agency cannot be sued under § 1983;[3] therefore, Counts 3, 4, and 5 must be dismissed, with prejudice, as to the Commission.


C. Plaintiffs' claims against Officer Reynolds in his official capacity

Officer Reynolds has been sued as an Officer of the Florida Fish & Wildlife Conservation Commission.[4]  In his official capacity Reynolds is subject to the same

---

[3]Kentucky v. Graham, 473 U.S. 159, 169 (1985) (observing that 42 U.S.C. § 1983 was not intended to abrogate a State's Eleventh Amendment immunity).

[4]Plaintiffs' complaint is unclear as to whether each claim naming Defendant Reynolds is intended to be brought against Reynolds in his official capacity or in his individual capacity.  The Court has addressed all claims against Defendant

protections as described above, according to well-settled precedent that a suit against an officer in his or her official capacity is not a suit against the official but rather is a suit against the official's office.  Brandon v. Holt, 469 U.S. 464, 471 (1985)).  Therefore, Counts 1, 2, 4, and 5 against Defendant Reynolds in his official capacity are dismissed, with prejudice, as there is no basis for liability under 42 U.S.C. § 1983, and Counts 6 - 10 are dismissed, with prejudice, for failure to comply with the terms of Fla. Stat. § 768.28, as discussed above.


D. Plaintiffs' state law claims against Officer Reynolds in his individual capacity

As to the state law claims against Defendant Reynolds in his individual capacity, the Court again turns to the provisions of Fla. Stat. § 768.28:

> No officer, employee, or agent of the state or of any of its subdivisions shall be held ***personally*** liable in tort or named as a party defendant in any action for any injury or damage suffered as a result of any act, event, or omission of action in the scope of her or his employment or function, ***unless such officer, employee, or agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property....***  The exclusive remedy for injury or damage suffered as a result of an act, event, or omission of an officer, employee, or agent of the state or any of its subdivisions or constitutional officers shall be by action against the governmental entity, or the head of such entity in her or his official capacity, or the constitutional officer of which the officer, employee, or agent is an employee, unless such act or omission was committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property. The state or its subdivisions shall not be liable in tort for the acts or omissions of an officer, employee, or agent committed while acting outside the course and scope of her or his employment or committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful

---

Reynolds as if they were brought against him in either capacity.

disregard of human rights, safety, or property.

Fla. Stat. § 768.28(9)(a) (emphasis added).  In this case, Defendant Reynolds is only liable individually for the state claims to the extent that his actions were either outside the scope of his employment, or were within the scope of his employment and were performed in bad faith or malicious purpose or with wanton and willful disregard for human rights.  Plaintiffs specifically allege - which this Court accepts as true for purposes of ruling on the motion to dismiss - that Defendant Reynolds was acting in the scope of his employment during all relevant times;[5] to establish liability Plaintiffs therefore must demonstrate that Reynolds engaged in conduct that was extreme enough to render him individually liable pursuant to Fla. Stat. § 768.28(9)(a).

Several specific allegations as to Officer Reynolds' conduct ("Harassment of Bloom Family") are found in paragraphs 99 - 101 of Plaintiffs' Third Amended Complaint.  For example, Plaintiffs state that on the day of the arrest of Bloom, Reynolds "handled the seizure of the deer and other wildlife .... [and] assisted ... in capturing [a deer] by tranquilizing it, resulting in the otherwise healthy animal dying in police custody at the Everglades Outpost several days later."  Nothing about this statement reveals a malicious purpose on Reynolds' part.  Similarly, the Court finds that the allegation that Reynolds "assisted with impounding the birds

---

[5]Plaintiffs also specifically allege that all of the defendant law enforcement officers acted within the scope of their employment at all times, see ¶ 186 (Count 4), ¶ 201 (Count 5), ¶ 212 (Count 6), ¶ 223 (Count 7), ¶233 (Count 8), ¶247 (Count 9), and ¶ 262 (Count 10).

and cages .... [and while] loading the large wildlife cages holding the expensive exotic birds, Officer Reynolds believed the cages contained the wrong food," (¶100), does not even minimally suggest bad faith or wantonness in Reynolds conduct.

In other paragraphs of the complaint,[6] Plaintiffs note that Officer Reynolds previously cited Andrew Bloom for a loose deer in October 2001 (¶75), promoted adverse publicity of Andrew Bloom at the time of his arrest in 2002 (¶ 55), laughed at Bloom when he was arrested (¶ 56), was "deliberately indifferent to Andrew Bloom's medical needs" (¶ 57), colluded to fabricate reasons to enter onto [Bloom's] property with an unsupported search warrant to seize animals (¶ 20), and failed to advise a state judge that prior citations against Bloom had been dismissed (¶ 72). Plaintiffs also generally complain that Officer Reynolds "resorted to an illegal search and seizure" and "acted out of ill will and vengeance, and as retribution against Andrew Bloom's successful efforts to defeat [Reynolds', Peacock's, and Waggoner's] earlier police efforts to ruin him." (¶19).  Other references to Reynolds' conduct are non-specific or are conclusory; for example, Plaintiffs claim that Reynolds "has a history of enforcement activity and harassment claims with the Bloom family" (¶ 99), and that Reynolds was part of a plan purposely designed to professionally and personally humiliate Betsy Bloom - daughter of Andrew Bloom (¶ 143).

---

[6]The Complaint incorporates all 150 paragraphs of factual allegations at the beginning of each Count, making it difficult to identify which specific factual allegations are supportive of each claim.

Having reviewed the complaint, the Court finds that Plaintiffs have not alleged sufficiently that Defendant Reynolds's actions were performed "in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." Fla. Stat. § 768,28(9)(a). Plaintiffs' general statement that Officer Reynolds acted "out of ill will and vengeance" is not supported by specific allegations in the complaint and, by virtue of the conclusory nature of such a general statement, is not entitled to a presumption of truth.[7]  For example, Plaintiffs' complaint states that the "sole factual support for the search warrant" was an affidavit by Defendant Peacock (¶97) - thereby implicitly acknowledging that Officer Reynolds provided no direct support for the issuance of the search warrant, in contrast to the allegations in ¶ 20.  Although Officer Reynolds was present at the time of the seizure, his alleged conduct at that time - laughing at Bloom when he was arrested and promoting adverse publicity of Bloom at the time of the arrest - simply does not amount to the type of conduct found to be in bad faith or with malicious purpose as described in Fla. Stat. § 768.28(9)(a). Therefore, all of the state tort claims against Officer Reynolds in his individual capacity (Counts 6-10) are dismissed, with prejudice.

---

[7]A district court considering a motion to dismiss shall begin by identifying conclusory allegations that are not entitled to an assumption of truth - legal conclusions must be supported by factual allegations. Randall v. Scott, 610 F.3d 701, 709-10 (11th Cir. 2010).

11

E.  Plaintiffs' federal claims against Officer Reynolds in his individual capacity

As to the federal claims against Officer Reynolds in his individual capacity

(Counts 1, 2, 4, and 5), Defendants argue that Reynolds is entitled to qualified

immunity.  Qualified immunity protects government officials performing

discretionary functions from suits in their individual capacities unless their conduct

violates clearly established statutory or constitutional rights of which a reasonable

person would have known.  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

Plaintiffs argue that it would be premature to grant Defendant Reynolds the

protection of qualified immunity at this stage of the proceeding, and rely - again -

on general allegations in the complaint; it is permissible, however, to raise a

qualified immunity defense in a motion to dismiss.  "The district court then

examines the complaint to see whether the allegations themselves reveal the

existence of the qualified immunity defense, i.e., whether, under the most favorable

version of the facts alleged, defendant's actions violate clearly established law."

Bennett v. Parker, 898 F.2d 1530, 1535 (11th Cir. 1990).

As the Plaintiffs have alleged, as discussed above, that all of the alleged

conduct by Reynolds was within the scope of his employment,[8] the burden is on

---

[8]Plaintiffs specifically allege that Reynolds and the other law enforcement
officers acted within the scope of their employment at all times, see ¶ 186 (Count 4),
¶ 201 (Count 5).  Although Counts 1 and 2 lack this specific allegation, it is clear
from the alleged conduct in those Counts, and Plaintiffs' incorporation in each of
those Counts of all 150 paragraphs of factual allegations, that Plaintiffs are
complaining about actions taken by the law enforcement defendants within the
scope of their employment.

Plaintiffs to establish that a reasonable officer in Reynolds' position at the time would have known that his conduct was unconstitutional  Garrett v. Athens-Clarke County, 378 F. 3d 1274, 1278-79 (11th Cir. 2004); if Plaintiffs cannot do so, then qualified immunity applies.

The Court must determine whether Plaintiffs have alleged a constitutional violation, and whether the constitutional right which allegedly was infringed was clearly established.  Pearson v. Callahan, 555 U.S. 223, 232-43 (2009) (discussing Saucier v. Katz, 533 U.S. 194 (2001)).  In the present case, discernment of the specific constitutional violations alleged by Plaintiffs is difficult because their complaint improperly combines multiple allegations of infringed constitutional rights in a single count;[9] however, the Court has examined the claims and determined that all of the colorable claims (in the counts alleging constitutional violations) flow from three specific types of conduct: the arrest (including the allegedly unlawful entry onto property), the seizure of animals and failure to return those animals,[10] and the prosecution of Andrew Bloom and related defamatory statements.

The examination as to whether the law is "clearly established" (as to any of

_____

[9]For example, in Count 4, Plaintiffs complain of deprivations of their rights protected by the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution.

[10]To the extent that Plaintiffs complain of a failure of Defendants, generally, to keep accurate records of the location of the animals after seizure - the Court finds that such claim cannot be sustained as to Defendant Reynolds as there are no allegations that he was responsible for the record-keeping.

13

these alleged violations) is based on the concept that officials are entitled to "fair notice" that the challenged conduct is prohibited.  To determine whether the law is clearly established, courts look to broad case law, or to cases based on materially similar facts, or to the specific conduct itself to determine whether it so obviously violates the Constitution that reference to prior case law is unnecessary.  Randall v. Scott, 610 F.3d 701, 715-16 (11th Cir. 2010).  Plaintiffs have failed to identify any specific case law (either broad case law or cases with materially similar facts), and as such appear to claim that Defendant's conduct was "'so far beyond the hazy border between excessive and acceptable [conduct that Defendant] had to know he was violating the Constitution even without caselaw on point.'"  Priester v. City of Riviera Beach, 208 F.3d 919, 926 (11th Cir. 2000)(quoting Smith v. Mattox, 127 F.3d 1416, 1419 (11th Cir. 1997)).  The Court now turns to the question of whether Plaintiffs' allegations - under the most favorable version of the facts - demonstrate that the Defendants' actions in the specific circumstances violated clearly established law.

i. The arrest and entry on property

The constitutional right to be free from a wrongful arrest is, of course, well established.  This Court must determine whether, at the time of the incident, every objectively reasonable police officer would have realized that the act of arresting Plaintiff Andrew Bloom violated already clearly established federal law.  Qualified immunity protects from suit "all but the plainly incompetent or one who is

14

knowingly violating the federal law." <u>Willingham v. Loughnan</u>, 261 F.3d 1178, 1187 (11th Cir. 2001).

False arrest is the unlawful restraint of a person against that person's will. Defendant Reynolds is entitled to qualified immunity if the record reveals that he had actual probable cause for the arrest, thereby rendering the arrest and subsequent restraint of Andrew Bloom lawful.  When determining whether probable cause existed, the subjective intent of the officer is not relevant, <u>Davis v. Scherer</u>, 468 U.S. 183, 191 (1984) (qualified immunity is evaluated under a purely objective standard).  Qualified immunity "shields an officer from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted.  <u>Brosseau v. Haugen</u>, 125  S.Ct. 596, 599 (2004).  "[A]n arrest will be upheld if the objective circumstances justify the arrest."  <u>United States v. Jones</u>, 377 F. 3d 1313, 1314 (11th Cir. 2004), <u>citing</u> <u>Arkansas v. Sullivan</u>, 532 U.S. 769 (2001).  Indeed, Defendant is protected even if he only had "arguable"probable cause for his actions.  "To determine whether arguable probable cause exists, courts must look to the totality of the circumstances," <u>Davis v. Williams</u>, 451 F. 3d 759, 763 (11th Cir. 2006).

The only allegations as to Officer Reynolds in the complaint relating to the arrest are that he "handled the seizure of the deer and other wildlife" (¶ 100); thus it appears that other law enforcement officers arrested Bloom. Indeed, Plaintiffs state that Bloom "was arrested by Officer Peacock" (¶ 31), thereby acknowledging that Reynolds was not the arresting officer.  Even if Reynolds had been the

arresting officer, Plaintiffs must establish that Reynolds is subject to individual liability for the arrest.

The complaint alleges that Reynolds colluded to fabricate reasons to enter onto Bloom's property with an unsupported search warrant to seize Bloom's animals (¶ 20), but the complaint also alleges that the "sole factual support for the search warrant" was an affidavit by Defendant Peacock (¶97).[11]  Plaintiffs also allege that it was well known to Reynolds (and Peacock), "but never disclosed to any judicial or prosecution authority by the officers when seeking the warrant" that prior citations against Bloom had been dismissed or that Bloom had been acquitted thereof (¶ 71).[12]

It is clear from the complaint that on the day of the arrest of Bloom, Officer Reynolds was relying on a search warrant to support his entry on the property - a search warrant obtained on factual support offered solely by Officer Peacock;  the Court does not find that Plaintiffs have alleged a constitutional violation as to Reynolds' entry onto the property. (Plaintiffs' bare allegations in the complaint

_____

[11]Bloom claims that Officer Peacock never personally saw any of the "underweight" or "malnourished" animals referenced in the search warrant, instead she relied on reported complaints from neighbors and others.

[12]Plaintiffs also complain that Reynolds (and Peacock) failed to advise the judge issuing the search warrant that a prior citation against Gary Bloom, the son of Andrew Bloom, had been dismissed.  Even if such a fact were relevant as to the search warrant requested for Andrew Bloom's property, the Court does not find that it renders Reynolds responsible for any infirmities in the search warrant as Plaintiffs specifically allege that Officer Peacock provided the sole factual support for the warrant.

cannot establish that Reynolds himself intentionally or recklessly included false information in the support for that affidavit.)

As to the arrest of Andrew Bloom, the Court looks to the allegations of the complaint to determine whether probable cause existed for the arrest. Bloom states that he was prosecuted for felony counts of animal cruelty and misdemeanor counts of confining animals without sufficient water. (¶ 55). It appears that Bloom was arrested pursuant to Fla. Stat. § 828.12 which provides, *inter alia*, that it is a felony to intentionally deprive an animal of necessary sustenance or shelter, and Fla. Stat. § 828.13, which provides that it is a misdemeanor to confine an animal and fail to supply a sufficient quantity of good and wholesome food and water, or without wholesome exercise.

On the rainy day of the arrest at the Golden Stirrup property, according to Plaintiffs' complaint, a law enforcement officer (Officer Peacock) observed that there were several dead ducks and two peacocks in outdoor cages without food or water. (¶ 30). In addition, a gray mare was observed to be underweight, and another horse in an outer stall had no bedding, moldy hay, and dirty water (¶ 36); other horses were observed to be underweight (¶¶ 38, 40, 42), and a pony appeared sickly (and later died) (¶ 42). Several pigs were observed in a 100 square foot outer stall without food or water (¶ 37), two cows were observed to be underweight (¶ 91), and donkeys were observed to be underweight, sunburned and had open sores (¶ 42). Andrew Bloom claims that he had a vehicle loaded with animal grain and feed purchased earlier on the day of the arrest, and that the food would have been

17

distributed to all of the animals as soon as the steady rain slowed.  (¶ 44), and that despite Plaintiffs' own statements in the complaint as to the observations of law enforcement, "not a single animal, bird, or fowl on the ... property lacked sufficient food, water, or shelter" (¶ 48).  Bloom alleges that veterinarians Dr. Peter Alvarez and Dr. Cristobal Flores were familiar with the health and care of the Bloom animals and would not have agreed with the law enforcement opinion that the animals were malnourished or neglected.    An officer is entitled to qualified immunity if he had "arguable probable cause" – such that "reasonable officers in the same circumstances and possessing the same knowledge" could have believed that probable cause existed for the arrest.  Kingsland v. City of Miami, 382 F. 3d 1220, 1232 (11th Cir. 2004) (citations omitted).  Accepting the alleged facts as true in Plaintiffs' complaint regarding the conditions observed by law enforcement officers at the time of the search, it is clear that arguable probable cause existed for the arrest of Andrew Bloom.  Even if a veterinarian conducting a more thorough examination of each animal would not have found that the animals were malnourished or neglected, Plaintiffs' complaint clearly states that several animals were observed by Officer Peacock (and others) to have no food or water in their cages or stalls, donkeys were observed with open sores, and other animals were observed to be underweight.

In light of the stated observations (reported in Plaintiffs' complaint) made at the time of Bloom's arrest, the Court cannot find that Plaintiff has alleged that a reasonable officer in Reynolds position would have known that the arrest of

Plaintiff on that date for the misdemeanor of confining animals without sufficient water (or for felony animal cruelty[13]) was unconstitutional. "Arguable probable cause does not require an arresting officer to prove every element of a crime or to obtain a confession before making an arrest, which would negate the concept of probable cause and transform arresting officers into prosecutors." Scarbrough v. Myles, 245 F. 3d 1299, 1302-03 (11th Cir. 2001). Plaintiffs have not cited, nor has this Court identified, a reported case with similar facts nor have Plaintiffs provided any other basis for finding that the law was clearly established that an arrest under these circumstances was prohibited. In light of the facts surrounding the arrest, as viewed in favor of Plaintiffs, Reynolds had at least arguable probable cause for the arrest and therefore is entitled to qualified immunity for any claims against him individually relating to the arrest.[14]

ii. the seizure of the animals

Defendant Reynolds is entitled to qualified immunity for the seizure of the property if "the facts known to him at the time of the seizure at least arguably

---

[13]Lee v. Ferraro, 284 F. 3d 1188, 1196 (11th Cir. 2002) (an arrest supported by probable cause for a particular offense may be valid even if the arresting officer relies on an offense for which no probable cause exists).

[14]The Court observes that Plaintiffs also may be attempting to claim that Reynolds or other Defendants exhibited a deliberate indifference to "Andrew Bloom's medical needs" (¶ 57) by denying him his blood pressure medication, but Plaintiffs have not alleged that any of the Defendants acted with deliberate indifference to Andrew Bloom's serious medical needs. Lancaster v. Monroe County, Ala., 116 F.3d 1419, 1425 (11th Cir. 1997).

created a reasonable suspicion 'associating the property with criminal activity.'"
<u>Lindsey v. Storey</u>, 936 F.2d 554, 559 (11th Cir. 1991) <u>quoting</u> <u>Payton v. New York</u>,
445 U.S. 573 (1980).  As noted above, the complaint established that at least
arguable probable cause existed for the arrest of Bloom for animal cruelty or
confining animals without sufficient water.  Moreover, Plaintiffs have not identified
any caselaw (or other source of authority) establishing that a seizure of animals in
these circumstances was prohibited - therefore, Reynolds is entitled to qualified
immunity as to the seizure of the animals.[15]  As to the failure to return the animals,
the Court finds that Bloom has failed to state facts alleging that Officer Reynolds is
individually liable for such conduct.


<u>iii. the prosecution and allegedly defamatory statements</u>

    To establish that Defendant Reynolds is individually responsible for violating
Andrew Bloom's right to be free from malicious prosecution, Plaintiffs must
demonstrate, *inter alia*, that the arrest was without probable cause, and that the
Defendant acted with malice.  To succeed on a federal malicious prosecution claim,
a plaintiff must not only prove the elements of the state tort of malicious

---

    [15]At this stage of the case, it is unclear whether the animals were confiscated
in order to be properly cared for, or as a penalty for the charges for which Bloom
was prosecuted.  The Court has analyzed the question of qualified immunity as if
the animals were property seized in association with criminal activity.  Presumably
there is a lesser legal standard governing whether qualified immunity applies to a
law enforcement officer's confiscation of animals to protect them from cruelty - but
the parties have not made such arguments and the Court need not reach that issue.

prosecution but also establish that his Fourth Amendment right to be free from unreasonable seizure was violated. <u>Kingsland v. City of Miami</u>, 382 F.3d 1220, 1234 (11th Cir. 2004). As Plaintiffs have not alleged that Reynolds was the "legal cause" of the prosecution, the claim must fail. <u>Alamo Rent-A-Car, Inc. v. Mancusi</u>, 632 So.2d 1352, 1355 (Fla. 1994).

Plaintiffs allege in Count 1 that all individual defendants (including Reynolds) made "maliciously false statements to the media concerning the plaintiffs and their property, and engag[ed] in an offensive and false pattern and practice of maligning the plaintiffs that continues to this day by causing the plaintiffs and members of their family to be viewed as animal molesters whose property was used for acts of significant cruelty, who were forced to flee South Florida as a result of their misdeeds, and who continue to engage in animal cruelty conduct elsewhere in Florida." (¶ 159). These allegations were not included in Plaintiff's original complaint, nor in the amended complaint and - as such - are untimely and subject to dismissal (see discussion, below). Similarly, all of the claims of Adele Bloom (Count 2) are subject to dismissal as untimely. (The timeliness of Adele Bloom's claims is discussed *infra* at pp. 22-23.)

In summary, accepting all of Plaintiffs' factual allegations in the Third Amended Complaint as true, there is no basis for a finding that Plaintiffs' constitutional rights were violated by Defendant Reynolds, and therefore Defendant Reynolds is entitled to qualified immunity as to all federal claims against him in his individual capacity.

## II. Plaintiffs' claims against Miami-Dade County and the County Officers

The County and Sergeant DiBernardo and Officer Peacock all seek to dismiss the complaint, arguing that it is a shotgun pleading, that there is no basis for relation back of several of the claims - and therefore those claims are time-barred, that there is no *respondeat superior* liability, and also that Plaintiff failed to satisfy the pleading requirements for a § 1983 claim. In addition, the County and the Officers in their official capacity claim sovereign immunity, citing the notice provisions of Fla. Stat. § 768.28 - as described above. The County Defendants also allege that all of the claims of Adele Bloom are subject to dismissal as untimely.

## A. Adele Bloom's claims

The Court first addresses the County Defendants' arguments as to the claims brought by Adele Bloom, the wife of Andrew Bloom, as to the Officers.[16] (Adele Bloom is not pursuing a claim against the County directly.) It is undisputed that Plaintiffs' animals were seized on July 31, 2002, and Plaintiff Andrew Bloom was prosecuted for felony animal cruelty until the charges against him were *nolle prossed* on July 1, 2005. Adele Bloom was not added as a party until May 2009. Plaintiff Andrew Bloom's earlier complaints did not purport to bring an action on

---

[16]It is unclear from the complaint whether such claims are brought against the Officers in their official or individual capacity - in any event, the claims are time-barred, as discussed above.

22

behalf of Mrs. Bloom,[17] and the Court finds that there is an insufficient basis to permit Ms. Bloom's untimely claims to proceed.  Plaintiffs unsuccessfully attempt to extend the statute of limitations by arguing that the County Defendants have not yet corrected the actions which occurred prior to July 1, 2005, and have not yet returned the seized animals.   The Court rejects these arguments and finds that Plaintiffs have not met the timeliness requirements as to the claims brought by Mrs. Bloom, i.e., there is not a sufficient basis to either permit relation back to an earlier complaint nor toll the statutes of limitations.  Therefore, all claims in Count II, brought by Adele Bloom, are dismissed.[18]

## B. Notice and sovereign immunity issues

Plaintiff Andrew Bloom apparently intended to name Miami-Dade County in the original complaint filed in this case; although the style of the case included only the Mayor of the County, the Board of County Commissioners, and the "Sheriff" [sic], the statement of the parties included "Miami Dade County", and the Court finds that the County was on notice of some of the federal claims in this action as

---

[17]The sole reference to Mrs. Bloom in the original complaint in this case was a statement that "Andrew Bloom had to borrow funds to pay his attorney and make bail and to just be able for he and his wife to live."  The reference to Mrs. Bloom in the original complaint in the related case, Case No. 06cv21880, is similar, "[Andrew] Bloom had to go into debt to pay these expenses ... and to just be able for Plaintiff Bloom and his wife to live."  According to the current version of the complaint, Adele Bloom was in Ocala at the time of the arrest of Andrew Bloom. (¶ 58).

[18]This ruling also applies to Mrs. Bloom's claims against Officer Reynolds.

early as 2006, within the applicable statute of limitations for § 1983 claims.  In addition, Sgt. DiBernardo and Officer Peacock were named in the original complaint and therefore had timely notice as to some of the federal claims.[19]

As to Plaintiffs' state tort claims against the County, the Court finds that such claims are subject to dismissal for the same reasons that the state tort claims against the State Commission were subject to dismissal: Plaintiffs' failure to comply with the notice provisions of Florida's limited waiver of sovereign immunity, found in Fla. Stat. § 768.28(6).   Notice of a claim against a municipality such as Miami-Dade County must be provided in writing to the appropriate agency within three years of the accrual of a claim against the state.

> An action may not be instituted on a claim against the state or one of its agencies or subdivisions unless the claimant presents the claim in writing to the appropriate agency, ... within 3 years after such claim accrues and ... [the] appropriate agency denies the claim in writing ....

Fla. Stat. § 768.28(6).  The complaint does not plead that Plaintiff complied with the notice provisions of Florida's limited waiver of sovereign immunity, Fla. Stat. § 768.28, within the appropriate time period, and Plaintiffs' implicit acknowledgment - in their response brief - that notice was untimely reveals the weakness of Plaintiffs' position.  As discussed above, with respect to the claims against the State Commission, the failure to plead compliance with this statute - and the impossibility of timely compliance at this stage - render Plaintiffs' claims fatally

---

[19]The original complaint is silent as to any factual allegations against Sergeant DiBernardo, and only includes her name (misspelled as Diobernado) in the style of the case.

flawed.  Therefore, Counts 6-10 are dismissed, with prejudice, as to the County and as to the Officers in their official capacity.

## C. Timeliness of state tort claims against the Officers individually

The Officers have been sued in their individual capacity as to the state torts. These Defendants argue that the state law claims – all of which were first plead specifically in May 2009 (in the Second Amended Complaint) - are time-barred.[20] Fed. R. Civ. P. 15(c)(1) provides for relation back to the original pleading when an amended pleading "asserts a claim or defense that arose out of conduct, transaction, or occurrence set out - or attempted to be set out - in the original pleading."  Rule 15(c) is grounded in the principle that a party who is notified of litigation concerning a specific occurrence has been given "all the notice that the statutes of limitation are intended to afford."  Forzley v. AVCO Corp. Elec. Div., 826 F.2d 974, 981 (11th Cir. 1987), citing 3 J. Moore, Moore's Federal Practice (2d ed. 1985).

The original complaint in this case describes the arrest of Andrew Bloom on July 31, 2002, and the seizure of animals from Bloom's property, and references the "mental strain" suffered by Bloom as a result of the false statements given to support the search warrant.  As Bloom was proceeding without counsel at the time, the Court will liberally construe the allegations in that initial complaint, but even such a liberal construction cannot support a finding that all of the state law claims

---

[20]The County also raised this argument as an additional basis for dismissal of the state law claims against the County and the Officers in their official capacity.

presently plead are sufficiently related to the original complaint such that they relate back and are considered to be timely plead.

Plaintiff Andrew Bloom alleged in his original complaint in this case that the raid on Bloom's property "was nothing more than plain retribution by two police officers [State Officer Reynolds and County Officer Peacock]." This general assertion cannot support the presently plead claims for defamation, libel, or slander (Count 8), which were added to the complaint on May 9, 2009.[21] In Florida, the statute of limitations for defamation claims is two years. Fla. Stat. § 95.11(4)(g). Plaintiffs complain that all Defendants[22] engaged in the following:

> conducting a false arrest and prosecution ..., pursuing false charges ..., furthering false civil animal removal charges ..., communicating information regarding the wrongful arrest, prosecution, and animal seizure proceedings, *publishing and disseminating that information for consideration by members of the public, contending in published statements the plaintiffs were engaged in acts of animal abuse and neglect*, and *alleging publicly that the plaintiffs were not fit to care for animals*.

Complaint, ¶ 230 (emphasis added). As the present complaint does not reveal any specific defamatory or libelous or slanderous statements by Sergeant DiBernardo or Officer Peacock within the relevant period, i.e., two years prior to May 9, 2009, dismissal is required. Thus, Count 8 is DISMISSED, with prejudice, as untimely,

---

[21]The first amended complaint, filed in 2008, repeats the allegation quoted above (as to "retribution"), and does not add any claims for defamation, libel, or slander.

[22]Although Count 8 incorporates all 150 factual allegations of the complaint, Plaintiffs do not identify any specific statements made by specific Defendants.

as to both Defendants DiBernardo and Peacock, in their individual capacity.[23]

The Court finds, however, that the County Officers - both of whom were identified in the original complaint, filed by Bloom without the assistance of counsel, have had sufficient notice since at least July 2006 as to the question of whether Bloom's property was taken and whether he was the subject of an intentional effort - through illegal acts - to cause him distress.   As the applicable statutes of limitations for each of these claims (Counts 6,7, 9, and 10) is four years,[24] and the original complaint was filed on July 27, 2006 - prior to expiration of the limitations period on July 31, 2006 - the Court finds that the claims were timely presented.  In light of the above, the Court rejects Defendants' request for dismissal, as untimely, as to the state law claims in Count 6 (intentional infliction of emotional distress), Count 7 (conspiracy),[25] Count 9 (trespass to chattel),[26] and Count 10 (conversion), as to Defendants in their individual capacity.

Having determined that these claims sufficiently relate to those claims raised

_____

[23] This ruling also applies to any claims of defamation against Officer Reynolds.

[24]See this Court's Order of March 2010.

[25]To succeed on a claim of conspiracy requires Plaintiff to establish "an agreement between two or more persons to achieve an illegal objective, one or more overt acts pursuant to that agreement, and resulting injury to the plaintiff." Armbrister v. Roland Int'l Corp., 667 F. Supp. 802 (M.D. Fla. 1987).  Plaintiff alleged in his original complaint that Officer Reynolds and Officer Peacock engaged in illegal acts which caused Bloom mental and financial damages - this was a very minimally sufficient statement of a conspiracy claim.

[26]The property at issue is the animals that were seized during the raid on July 31, 2002.

27

in the original complaint, the Court will permit the relation back of these claims and, consequently, the motion to dismiss such claims as untimely is denied.

D. Federal claims against Miami-Dade County

In Counts 3, 4, and 5, Plaintiffs seek to impose liability on Miami-Dade County under 42 U.S.C. § 1983.   Plaintiffs specifically rely on the theory of *respondeat superior* in Counts 4 and 5, alleging that the County is responsible for the acts of its law enforcement officers in conducting the arrest and prosecution of Bloom and the seizure of the animals.  Plaintiffs are incorrect, as a municipality cannot be held liable under § 1983 on the basis of *respondeat superior*.  Monell v. Dep't. of Soc. Servs., 436 U.S. 658, 691 (1978).  Therefore, dismissal of Counts 4 and 5 against the County is required.

As to Count 3, which seeks to impose liability on the County for having a pattern or custom of wrongful police practices designed to deprive animal owners of their animals, Defendant argues that the claim was newly introduced in the Third Amended Complaint and, as such is barred by the statute of limitations.  The Court agrees that the claim is untimely and that Plaintiffs have not established a sufficient basis for a finding that the claim should relate back to the original complaint - which alleged only conduct directed toward Bloom and not a widespread pattern of conduct against animal owners.

Even if the Court were to find that such claims were not time-barred, the claims in Count 3 would be subject to dismissal on other grounds.  Plaintiffs include

allegations of liability based on *respondeat superior* which, as discussed above, must fail.  Plaintiffs also claim that it was the policy, practice, and custom of the County (and the State Commission) to inadequately and improperly investigate complaints of animal abuse, and to delegate responsibility for determining the existence of animal abuse to the South Florida S.P.C.A.  (¶ 170).  Plaintiffs allege specifically in Count 3 that the County (and the State) inadequately and improperly supervised and trained their respective officers, "... thereby failing to adequately prevent constitutional violations on the part of their law enforcement officers." (¶ 171).

In the factual allegations of the Third Amended Complaint, Plaintiffs complain about:

> the pattern and practices of the Miami-Dade Police Department and the Florida Fish & Wildlife Conservation Commission, and their agents, officers, officials, and representatives, in conducting animal abuse investigations, including fabricating investigations with an end toward depriving people of their animals in order to transfer the animals to animal rights and welfare organizations.  (¶ 150).

According to the complaint, Defendants "were collectively engaged in a joint and organized scheme to deprive owners of their lawfully obtained and maintained property through a pattern of misrepresentations, material omissions, fraudulent practices, and abuse of legal authority.  (¶ 152).

Despite these general allegations, Plaintiffs have not referenced any official policy, nor have they sufficiently alleged a widespread pattern of conduct.  The practice must be "so pervasive as to be the functional equivalent of a formal policy." Grech v. Clayton County, 335 F.3d 1326, 1330 n6 (11th Cir. 2003).  While a

29

municipality can be sued under § 1983 for acts implementing a policy, regulation, or

official decision adopted and promulgated by the County Commission, Plaintiffs

have not sufficiently alleged such facts. "Without proof of a custom or policy that

furthered the unconstitutional behavior of individual officers, municipalities are not

subject to liability under § 1983." <u>Maughon v. Bibb County</u>, 160 F.3d 658, 659-

60(11th Cir. 1998), <u>citing</u> <u>Monell v. Dept. of Soc. Srvs.</u>, 436 U.S. 658, 691-92 (1978).

Based on the above, Count 3 is dismissed, with prejudice, as to the County.[27]


<u>E. Claims against Sgt. DiBernardo</u>

Plaintiffs seek to impose liability on Sgt. DiBernardo because of her role in

the arrest of Bloom and, generally, for her supervision of Officer Peacock.  According

to the complaint, Sgt. DiBernardo accompanied other law enforcement officers along

with Andrew Bloom on the day of the arrest as they inspected the barn on Bloom's

property.  (¶ 30).  At the time of the arrest, Sgt. DiBernardo reportedly demanded

that Bloom consent to giving the animals to the police and the S.P.C.A. so that the

resolution of the case would not include a felony conviction of Bloom (¶ 47) - when

Bloom refused to consent, DiBernardo allegedly "got angry and threatened" Bloom

that if he did not sign the papers she would "do whatever was needed to make sure

Mr. Bloom was convicted and imprisoned, and that he would 'rot in jail' while

---

[27]This ruling applies equally to the State Commission.

awaiting his conviction." (¶ 47).[28]  Plaintiffs also claim that Sgt. DiBernardo (and the other Officers) were the cause of the allegedly excessive bond imposed by the court on Bloom.  Plaintiffs claim that the bond resulted from the "purposeful, intentional, and mean-spirited retribution by ... DiBernardo ... for Bloom's successful defense against repeated prior animal abuse allegations." ¶ 55.

Plaintiffs allege that, as Peacock's supervisor, DiBernardo was aware of Officer Peacock's "dislike of Andrew Bloom, and readily approved Officer Peacock's official actions targeting Andrew Bloom (¶ 97), and approved Peacock's affidavit, "while knowing of the falsities and omissions contained therein, or did so with reckless disregard for the truth." (¶ 98).  DiBernardo also allegedly approved of the investigation leading to the targeting of Bloom, and was aware of and approved of the S.P.C.A. and Laurie Waggoner "acting as an authorized agent for the Miami-Dade Police Department in connection with the investigation, arrest, and prosecution of Bloom, and the seizure of the animals.  (¶ 98).

Plaintiffs assert that DiBernardo's conduct subjects her to liability under 42 U.S.C. § 1983.  As noted above, the doctrine of *respondeat superior* does not apply to suits for damages under 42 U.S.C. § 1983 so as to make supervisors liable for the acts of subordinates or employees and the Court dismisses Plaintiffs' claims against Sgt. DiBernardo in Counts 1, 4, and 5 to the extent that they seek to impose

---

[28]DiBernardo and others also were allegedly "deliberately indifferent to Andrew Bloom's medical needs." (¶ 57).  As noted above, in the discussion of claims against Officer Reynolds, such claims must fail as they do not sufficiently allege a deliberate indifference to serious medical needs.

vicarious liability on her for Officer Peacock's conduct.

As to the claims in Counts 1, 4, and 5 as to Sgt. DiBernardo's personal role in the arrest and prosecution of Bloom, the Court accepts all of the allegations as to DiBernardo's conduct as true and still finds no basis for imposing individual liability. It is specifically alleged by Plaintiffs - and evident from the alleged facts - that Sgt. DiBernardo was acting in the scope of her employment during all relevant times;[29] thus, to establish liability Plaintiffs must demonstrate that a reasonable officer in Sgt. DiBernardo's position at the time would have known that her conduct was unconstitutional. Sgt. DiBernardo's minimal participation in the procurement of the search warrant, her presence at the arrest,[30] the alleged demands she made on Plaintiff, and her purported efforts to influence a court to impose an "excessive" bond are not sufficient allegations to support Plaintiffs' claims that she intentionally violated Andrew Bloom's constitutional rights.

Moreover, the existence of probable cause at the time of the arrest would be an absolute bar to the § 1983 claim for wrongful arrest against Sgt. DiBernardo.

---

[29]Plaintiffs specifically allege in Counts 4 - 10 that DiBernardo and the other law enforcement officers acted within the scope of their employment at all times, see ¶ 186(Count 4), ¶ 201 (Count 5), ¶ 212 (Count 6), ¶ 223 (Count 7), ¶233 (Count 8), ¶247 (Count 9), and ¶ 262 (Count 10). Although Counts 1 and 2 lack this specific allegation, it is clear from the alleged conduct in those Counts, and Plaintiffs' incorporation in each of those Counts of all 150 paragraphs of factual allegations, that Plaintiffs are complaining about actions taken by the law enforcement defendants within the scope of their employment.

[30]Although Plaintiffs allege that DiBernardo lacked probable cause for the arrest (¶ 183), Count 4 does not include DiBernardo in the claim for wrongful arrest (¶ 185).

Kingsland v. City of Miami, 382 F.3d 1220, 1226 (11th Cir. 2004).  As noted above, in the discussion of the allegations against Officer Reynolds, even viewing the facts precisely as alleged by Plaintiffs, the arrest of Bloom was based on at least arguable probable cause and the seizure of the animals was reasonable.  Negligent mistakes do not violate the Fourth Amendment; the allegations here do not establish reckless wrongdoing by Sgt. DiBernardo (nor by Officer Reynolds), nor do they establish that she engaged in intentional misconduct.  Maughon v. Bibb County, 160 F.3d. 658, 660 (11th Cir. 1998), citing Franks v. Delaware, 438 U.S. 154 (1978). "'It is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present ... in such cases those officials ... should not be held personally liable." Maughon, 160 F. 3d at 661, quoting Anderson v. Creighton, 483 U.S. 635, 641 (1987).

In summary, Plaintiffs have not identified any "clearly established law" that placed Sgt. DiBernardo on fair notice that her conduct was prohibited, and the alleged facts of this case - viewed favorably toward Plaintiffs - do not support a finding that Sgt. DiBernardo violated the clearly established constitutional rights of Andrew Bloom; therefore, Counts 1, 4, and 5 are dismissed, with prejudice, as to Sgt. DiBernardo in her individual capacity.

Similarly, as to the state tort claims brought against Sgt. DiBernardo, the allegations of DiBernardo's minimal involvement simply do not amount to the type of conduct found to be in bad faith or with malicious purpose as described in Fla. Stat. § 768.28(9)(a) such that individual liability could be imposed.  Therefore, the

state claims against Sergeant DiBernardo in her individual capacity are dismissed, with prejudice.

## F. Claims against Officer Peacock

The allegations in Plaintiffs' complaint as to Officer Peacock are of a somewhat different nature than the allegations against the other Defendants.[31] According to Plaintiffs' allegations, Officer Peacock made material misstatements to a court in order to obtain a search warrant for Bloom's property. (¶ 97). Because Andrew Bloom was able to conduct discovery during the state's prosecution against him and has referenced in his complaint presently before this Court several facts ascertained during that discovery, see ¶¶ 60-93, the Court is able to view the claims in the complaint in a context that often is not available to a court when ruling on a motion to dismiss.

Plaintiffs allege that the depositions taken during discovery in the criminal case:

> not only revealed the fraud perpetrated on the court by Officer Peacock's blatant manufacture of facts, but also ... uncovered the scandalously corrupt arrangement between Officer Peacock and Lt. Reynolds and S.P.C.A. Director Waggoner targeting certain disfavored ranch owners for confiscation of their property in order to give the seized animals to others believed to be more deserving of the farm animals.

---

[31]Plaintiff Andrew Bloom has complained of Officer Peacock's conduct in every version of the complaint filed before this Court, including in the initial complaint filed in 2006. The Court has determined that the allegations against Officer Peacock as to several of the state torts are timely - as noted above.

(¶ 60). Although Plaintiffs make these general claims, the lack of specific factual allegations to support the claims - despite having had the opportunity to depose key witnesses/parties to this action - is revealing.  Even though the general allegations as to Officer Peacock's conduct are more numerous than the allegations as to the other Defendants' conduct, the volume of allegations does not compel a conclusion that a constitutional violation has been alleged.  Although a dismissal motion grounded on qualified immunity requires this Court to accept all factual allegations in the complaint as true and draw all reasonable inferences in the Plaintiffs' favor, the Court must reject conclusory allegations; only a plausible claim for relief can survive a motion to dismiss.

In Counts 1, 4, and 5, Plaintiff asserts a multitude of constitutional violations against Officer Peacock.  As Plaintiff has alleged - which this Court accepts as true - that Officer Peacock was acting within the scope of her duties, i.e., the challenged conduct was within her official discretionary functions, the burden is on Plaintiff to prove that he suffered a constitutional violation and that the constitutional right infringed was clearly established.   Pearson v. Callahan, 555 U.S. 223 (2009).  As noted above as to the claims against Officer Reynolds, it is difficult to determine the specific constitutional violations alleged by Plaintiff because the complaint includes multiple constitutional rights in a single count; however, the Court has determined that all of the colorable claims flow from three specific types of conduct by Peacock: the arrest (including the allegedly unlawful

35

entry onto property), the seizure of animals and failure to return those animals,[32] and the prosecution of Andrew Bloom and related defamatory statements.

If Plaintiffs' complaint sufficiently alleges a constitutional violation as to any of these areas of conduct, the Court then must determine whether the law in effect at the time of the violation  clearly established that the conduct amounted to a constitutional violation.  A complaint is subject to dismissal under Rule 12(b)(6) when its allegations, on their face, show that an affirmative defense bars recovery on the claim.  Cottone v. Jenne, 326 F.3d 1352, 1357 (11th Cir. 2003).

i. the arrest and entry on property

Plaintiffs allege that the Defendants performed an "unreasonable entry onto and search of plaintiffs' real property ... [based on] asserted criminal activity that did not occur".  (¶ 159).  Plaintiffs appear to claim that Officer Peacock's "material" misstatements and misrepresentations to the court issuing the search warrant are violations of Bloom's constitutional rights.  While the right to be free from a warrantless search is well established, the facts of this case do not present a situation in which a reasonable officer would have known that her conduct was in

---

[32]To the extent that Plaintiffs complain of a failure of Defendants, generally, to keep accurate records of the location of the animals after seizure - the Court finds that such claim cannot be sustained as to Defendant Peacock as there are no specific allegations that she was responsible for the record-keeping.

violation of Bloom's constitutional rights.[33]  Indeed, Plaintiffs have offered no

caselaw which clearly establishes, under circumstances similar to those relevant

here, that Officer Peacock should have known that her conduct was prohibited.

According to the complaint, Peacock told the court that she had "confirmed

Laurie Waggoner's observations" on July 30 (one day before the search warrant was

executed)[34] - despite the fact that Peacock did not <u>enter</u> Bloom's property on that

date.  Peacock also allegedly did not observe (e.g., from a distance, off Bloom's

property) underweight or sick horses or whether there was sufficient food or water,

or shade or shelter on July 30.  Notably, Plaintiff has not challenged Officer

Peacock's statement in the affidavit supporting the search warrant that the "ribs

_____

[33]To the extent that Plaintiffs may be claiming that the arrest improperly
implicated Andrew Bloom as the person responsible for the care of the animals
instead of his son Gary Bloom, ¶ 62, the Court finds that these allegations cannot
provide a basis for invalidating the arrest nor the search warrant.  It is clear that
honest mistakes made by officers in the "dangerous and difficult process" of serving
search warrants may be acceptable.  <u>Maughon v. Bibb County</u>, 160 F.3d 658 (11th
Cir. 1998) (ownership by innocent owner of one-half of land to be searched did not
invalidate search warrant as to entire property without showing that mistake by
law enforcement was intentional or reckless).  Bloom claims that Officer Peacock
knew but did not disclose that Gary Bloom was responsible for the care and feeding
of the animals at the Golden Stirrup.  (¶ 69).  To the extent that Andrew Bloom was
present at the time of the seizure, and has not alleged that he disavowed an
ownership interest in, or responsibility for, the animals at the time of the arrest, the
Court cannot find a basis for finding that Bloom's constitutional rights were
violated as to this issue.

[34]As Plaintiffs' complaint repeatedly references the affidavit of Officer
Peacock, the Court briefly reviewed the Affidavit for Search Warrant, Dkt. No. 81-1.
However, the Court's ruling on the pending motions to dismiss is not made in
reliance on the Affidavit, nor is there any need to refer to the Affidavit since
Plaintiffs' complaint includes explicit reference and quotations thereto.

and pelvic bones [of the horses] are highly visible" and that the horses "are lethargic and have poor body composition." (¶ 84.)

In her affidavit, Peacock stated that she had been denied access to the property by Andrew Bloom on "several occasions" but, according to the complaint, had never been denied access by Andrew Bloom.  Plaintiffs also complain of omissions by Peacock in her statement to the state court - e.g., specifically omitting that prior citations against Andrew Bloom for animal code violations had been dismissed or had been the subject of acquittals, and also that the Officer's affidavit was based on reports from other individuals (whose reports Plaintiffs claim were unreliable).  (¶ 97).[35]

According to Plaintiffs, Officer Peacock claimed that four neighbors verbally complained to her about the condition of the Bloom property in the year prior to Bloom's arrest, ¶ 73, but admitted that she had never spoken to Andrew Bloom about the condition or care of the animals until his arrest, ¶ 77.[36] The fact that Peacock had not previously addressed Bloom as to the condition of his animals is immaterial to the question of qualified immunity - as no "clearly established law"

---

[35]According to Plaintiffs, Peacock (and Reynolds) also failed to advise the judge issuing the search warrant that a prior citation against Gary Bloom, the son of Andrew Bloom, had been dismissed.  Even if such a fact were relevant as to the search warrant requested for Andrew Bloom's property, the Court would not find that the omission of such fact, standing alone or in concert with the other alleged deficiencies, invalidates the search warrant.

[36]Oddly, Plaintiff asserts that Officer Peacock claims that the (undocumented) complaint that resulted in the search warrant was made by Gary Bloom (to a Florida State Trooper), but Plaintiff alleges that Gary Bloom never made such a complaint.  (¶ 78).

requires a law enforcement officer to speak with a person in advance before charging that person with violating the law.

As another example of information included in the complaint apparently as a result of the discovery already conducted, the complaint references that Peacock relied on another officer's observations that "he saw several small, thin, horses chewing the wooden fences in pastures that appeared to have no water or shelter." (¶ 82). Plaintiffs complain that Officer Peacock did not personally see any of the underweight or malnourished animals but it is well established that an officer may rely on the observations of a fellow officer in obtaining a search warrant. "Observations of fellow officers ... engaged in a common investigation are plainly a reliable basis for a warrant applied for by one of their number." United States v. Ventresca, 380 U.S. 102, 111 (1965). Plaintiff has not cited any case law that requires an officer to verify independently facts related to her by other police officers before including the facts in an affidavit in support of a warrant.

Plaintiffs also allege that Peacock improperly relied on the observations of Waggoner of the S.P.C.A., who reportedly observed the animals on Bloom's property for 1-2 minutes when Waggoner pulled over on the side of the road adjacent to the property. According to the complaint - and apparently referencing the results of discovery which took place in the state case - Waggoner told Officer Peacock that "several yearlings in the north paddock were in poor condition, were underweight, and their rib and pelvic bones were visible [and that] she observed a chewed fence and no grass in the paddock that contained three yearlings and one donkey," and saw "underweight cows with swollen bellies." (¶ 90).

39

Pursuant to the standards described in <u>Franks v. Delaware</u>, 438 U.S. 154, 171-72 (1978), the Court must determine whether the warrant would be valid even without the alleged misrepresentations or omissions.[37]  After a careful review of the matter, the Court finds that none of the alleged misstatements or omissions by Peacock appear to have been so critical to the warrant that their deletion would have rendered the warrant invalid.  For example, Plaintiffs do not challenge Officer Peacock's statement in the affidavit supporting the search warrant that the "ribs and pelvic bones [of the horses] are highly visible" and that the horses "are lethargic and have poor body composition." (¶ 84.)  These statements provide independent support for the issuance of a warrant; when combined with the observations of another officer that there were "several small, thin, horses chewing the wooden fences in pastures that appeared to have no water or shelter," (¶ 82), the Court finds no basis for invalidating the warrant.

Indeed, Plaintiffs' own allegations acknowledge that one deer "looked thin" and another was "a little thin" (¶ 103), and the Bloom family veterinarian described some of the animals as "underweight" (¶ 110) - although he countered that none of

---

[37]The Eleventh Circuit Court of Appeals has applied the <u>Franks</u> framework in a qualified immunity context.  In the unreported decision of <u>Haire v.Thomas</u>, 219 Fed. Appx. 844 (11th Cir. 2006), the appellate court applied <u>Franks</u> and determined that there was no constitutional violation, as the warrant included a sufficient basis for a probable cause finding even if the challenged portions were eliminated.  <u>Id.</u> at 846.

the police observations indicated under-feeding,[38] as questions of under-feeding or under-hydration can only be confirmed with blood tests, ¶ 111. Although Plaintiffs repeatedly claim that Officer Peacock "did not observe" whether there was sufficient food or water, or shade or shelter for the animals or that it was not true that she observed underweight or sick horses,[39] Plaintiffs do not allege that any of these conditions did not exist at the time, rather simply that Peacock did not personally observe such conditions.

Accepting all of Plaintiffs' factual allegations (to the extent that they are plausible, or not conclusory[40]), the Court finds that Plaintiffs' complaint fails to raise a sufficient allegation of constitutional violations relating to the warrant.[41] And, as the factual allegations - viewed in favor of the Plaintiffs - establish that arguable probable cause existed for the arrest of Andrew Bloom by Officer Peacock on that date, she is entitled to qualified immunity as to these claims. In summary,

---

[38]The fact that Officer Reynolds observed that a vehicle on the property was loaded with sufficient food for several of the animals (the horses, goats, pigs and deer), ¶ 101, does not support a conclusion that the arrest was without arguable probable cause.

[39]Plaintiffs complain that Officer Peacock did not enter the property at 1:00 p.m. on July 30, 2002, when she purportedly confirmed the observations made by Laurie Waggoner, and that Officer Peacock did not make any personal observations that day. (¶ 97).

[40]Conclusory allegations are not entitled to an assumption of truth. Randall v. Scott, 610 F.3d 701, 709-10 (11th Cir. 2010).

[41]A dismissal motion grounded on qualified immunity requires this Court to accept all factual allegations in the complaint as true and draw all reasonable inferences in the Plaintiffs' favor. Dalrymple v. Reno, 334 F.3d 991, 994-95 (11th Cir. 2003). The Court applies this precedent in light of the Supreme Court's decision in Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009).

the Court concludes that these allegations - although more voluminous than those against other Defendants - are not sufficient to establish constitutional violations. Indeed, Plaintiffs have not identified (nor has this Court located) any case law or other sources of authority to support the claim that the law was clearly established that Officer Peacock's actions in this set of circumstances were prohibited.  Simply stated, there is no precedent condemning the acts complained of, and this Court cannot construct a theory of liability from facts not alleged by Plaintiffs.

ii. the seizure of the animals

In addition to the allegations of wrongful arrest, Plaintiffs also complain about the seizure of animals and the malicious prosecution of Andrew Bloom.  The seizure of the animals was supported - as described in Plaintiffs' complaint - by the observations of the officers on Bloom's property on that date, and the Court finds that arguable probable cause existed for the seizure.  Plaintiffs have failed to identify, nor has this Court's own research uncovered, any "clearly established law" that such a seizure was prohibited.  As such, Defendant Peacock is protected by qualified immunity from defending against this suit individually as to the claims in Counts 1, 4, and 5 for the seizure of the animals.

iii. the prosecution and allegedly defamatory statements

As the complaint makes it clear that the State Attorney controlled the prosecution, see ¶ 64, Plaintiffs have failed to allege that Peacock was the "legal cause" of the prosecution and, as such, the claim must fail.  Alamo Rent-A-Car, Inc.

v. Mancusi, 632 So.2d 1352, 1355 (Fla. 1994).[42] The claims of defamation and libel are subject to dismissal as time-barred; see discussion, above.[43]

In summary, Plaintiffs have not sufficiently alleged a set of facts that would allow any of these federal claims against Officer Peacock to survive qualified immunity.  To the extent that Plaintiffs attempt to impose liability on Peacock individually for any federal claims filed by Adele Bloom, or any federal claims relating to malicious prosecution or for defamatory statements or for failure to return the animals, such claims are dismissed as untimely or for failure to state a claim.

Plaintiffs have brought several state tort claims against Officer Peacock in her individual capacity: conspiracy, intentional infliction of emotional distress, trespass to chattel, and conversion.  The Court finds that Plaintiff Andrew Bloom has failed to meet the pleading requirements for an intentional infliction of emotional distress claim.  Florida law imposes a high burden on those alleging a claim for intentional infliction of emotional distress.  The alleged conduct must be

---

[42]Plaintiffs' own allegations demonstrate that Officer Peacock was not in control of the prosecution, indeed, Officer Peacock apparently did not have the power to persuade the prosecutor to pursue the case.  "In connection with the State Attorney's decision to drop all charges, both Officer Peacock and Waggoner protested the *nolle prosse*, continuing to contend Mr. Bloom had abused and neglected the animals." (¶ 64).

[43]In addition, the only specific allegations as to allegedly defamatory statements by Officer Peacock are those statements made in the context of obtaining a search warrant, which are protected as such statements were made in connection with Peacock's official duties.

"beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Metropolitan Life Ins. Co. v. McCarson, 467 So. 2d 277, 279 (Fla. 1985). Accepting all allegations as true, Plaintiffs have not demonstrated that Peacock's conduct was so outrageous as to be deemed "atrocious"; Count 6 is dismissed, with prejudice, as to Officer Peacock in her individual capacity.

Similarly, Plaintiffs have not sufficiently alleged either conspiracy or the property-related state torts were the result of such bad faith or maliciousness to render Peacock individually liable, according to Fla. Stat. § 768.28(9)(a). Although the alleged facts as to Officer Peacock are more disturbing to the Court than the conduct attributed to Sgt. DiBernardo or Officer Reynolds, the Court does not find that Plaintiffs have alleged plausibly that Officer Peacock exhibited "wanton and willful disregard of human rights, safety, or property."

CONCLUSION

The alleged facts of this case reveal that animals on Andrew Bloom's property[44] were seized by law enforcement as a result of the arrest of Bloom for animal cruelty and related charges, and that - despite Bloom's successful defense against those charges - the animals have not yet been returned. Before this Court,

---

[44]The Court need not delve into the issue of whether Andrew Bloom was the owner of the animals. Bloom described his reliance on his son Gary's "diligence" in his responsibilities for managing the Golden Stirrup ranch, ¶ 143.

on at least four different occasions,[45] Bloom has brought a multitude of federal and state claims against officers and entities involved in the arrest and seizure, but has failed to bring a claim as to which this Court can grant relief.

While the Court has described, above, certain bases for the dismissal of Plaintiffs' claims, several of the Defendants' other arguments also are meritorious - e.g., dismissal for violating pleading requirements of Fed. R. Civ. P. 10(b), dismissal of Counts 6-10 on the basis of sovereign immunity as to the County since the conduct of the officers is alleged to have been so extreme as to insulate the municipality from liability pursuant to Fla. Stat. § 768.28(9)(a), etc.

In summary, the Motion to Dismiss filed by the State Defendants is GRANTED, with prejudice, as to all claims against the Florida Fish & Wildlife Conservation Commission and against Officer Reynolds in his official capacity and individual capacity.   As stated above, Plaintiffs' claims all fail either due to sovereign immunity (and Plaintiffs' failure to comply with Fla. Stat. § 768.28), or a failure to properly plead allegations under 42 U.S.C. § 1983, or a failure to sufficiently plead a claim for individual liability pursuant to Fla. Stat. § 768.28(9)(a).

All claims brought by Adele Bloom, i.e., those claims in Count 2, are DISMISSED, with prejudice, as untimely.

The Motion to Dismiss filed by the County Defendants is GRANTED, as to Miami-Dade County, with prejudice as to all claims.  As stated above, Plaintiffs'

---

[45]Although Andrew Bloom was initially proceeding *pro se*, the most recent two versions of his complaint were filed by experienced counsel.

claims all fail either due to sovereign immunity (and Plaintiffs' failure to comply with Fla. Stat. § 768.28), or a failure to properly plead allegations under 42 U.S.C. § 1983, or because the claims are untimely.

The Motion to Dismiss filed by County Officers DiBernardo and Peacock is GRANTED, with prejudice, as to all claims against Sgt. DiBernardo in her official and individual capacity, and GRANTED, with prejudice, as to all claims against Officer Peacock in her official and individual capacity. All the dismissed claims are either untimely, or barred by sovereign immunity, or improperly plead supervisory liability under 42 U.S.C. § 1983, or are dismissed for failure to state a basis for relief.

DONE AND ORDERED in Chambers in Miami this 16 day of September 2011.

WILLIAM M. HOEVELER
SENIOR UNITED STATES DISTRICT COURT JUDGE

copies to:     Benedict P. Kuehne
               Dennis A. Kerbel